Kyle W. Parker, ABA No. 9212124
David J. Mayberry, ABA No. 9611062
CROWELL & MORING LLP
1029 W. 3rd Avenue, Suite 402
Anchorage, Alaska 99501
Telephone:     (907) 865-2600
Facsimile:     (907) 865-2680
kparker@crowell.com
dmayberry@crowell.com

*Attorneys for Plaintiff Shell Gulf of Mexico Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SHELL GULF OF MEXICO INC., ) | |
| ) | |
| Plaintiffs, ) | Case No. |
| vs. ) | |
| ) | **COMPLAINT FOR DECLARATORY** |
| CENTER FOR BIOLOGICAL DIVERSITY, ) | **RELIEF** |
| INC., REDOIL, INC., ALASKA ) | (28 U.S.C. § 2201) |
| WILDERNESS LEAGUE, NATURAL ) | |
| RESOURCES DEFENSE COUNCIL, INC., ) | |
| NORTHERN ALASKA ENVIRONMENTAL ) | |
| CENTER, PACIFIC ENVIRONMENT AND ) | |
| RESOURCES CENTER, SIERRA CLUB, THE ) | |
| WILDERNESS SOCIETY, OCEAN ) | |
| CONSERVANCY INC., OCEANA INC., ) | |
| DEFENDERS OF WILDLIFE, GREENPEACE, ) | |
| INC., AND NATIONAL AUDUBON ) | |
| SOCIETY, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

## I.     INTRODUCTION

1.     This action seeks a declaration that the United States Department of Interior,

Bureau of Safety and Environmental Enforcement ("BSEE") properly approved Plaintiff Shell

Gulf of Mexico Inc.'s ("SGOMI") 2012 Oil Spill Response Plan ("OSRP") (Exhibit A) in connection with exploration activities in the Chukchi Sea.

2.     Specifically, SGOMI seeks a declaration that BSEE's approval of the OSRP is valid under, and complied with the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331-56a ("OCSLA") and the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 *et seq.* ("OPA"), as implemented in regulations at 30 C.F.R. Parts 250 and 254.

3.     Plaintiff SGOMI and its affiliate Shell Offshore Inc. (collectively, "Shell") have, to date, invested billions of dollars in the exploration and development of energy resources on the Alaska Outer Continental Shelf ("OCS"), including over $2 billion for the purchase of its Chukchi Sea leases, acquired in the Chukchi Sea Planning Area Oil and Gas Lease Sale 193 held pursuant to the Department of Interior's OCS Oil & Gas Leasing Program for 2007-2012 (the "Five Year Plan").  Since 2007, Shell has satisfied countless statutory and regulatory requirements and has received dozens of necessary permits from various state and federal regulatory authorities in support of its proposed Arctic exploration.  Yet despite this long history of careful planning and successful compliance, Shell has yet to drill a single exploratory well on the leases in the Chukchi Sea that it purchased in Lease Sale 193 under the Five Year Plan.

4.     BSEE's approval of the OSRP moves SGOMI one step closer to obtaining all necessary permits and authorizations for exploratory drilling in the 2012 season.  To prepare for the season, SGOMI must continue to mobilize the personnel and resources so that SGOMI is in position to begin exploratory drilling at the start of the brief open-water season in July 2012.  This mobilization is a time-consuming and expensive process, and because many of the associated costs are fixed, SGOMI is required to commit substantial funds that will be lost and

unrecoverable if SGOMI is ultimately unable to conduct exploration activities in the Chukchi Sea this summer.

5.     BSEE's approval of the OSRP makes such exploration activities significantly more likely.  But SGOMI's exploration activities could be stymied, and a significant portion of its investment lost, by a last-minute judicial challenge to BSEE's OSRP approval, if it resulted in an injunction or vacatur and remand of BSEE's approval.

6.     That the Defendants—a collection of environmental groups—would file such a challenge is a virtual certainty.  These Defendants have a long history of bringing challenges to each and every stage of Shell's Arctic OCS exploration projects, as well as bringing countless other challenges to practically every federal regulatory decision pertaining to oil and gas activities in the Arctic, and some of them in fact have expressed the specific intent to challenge the approval of SGOMI's OSRP.  It is the consistent practice of these Defendants to bring their judicial challenges, using the potential for litigation-related delay as a tactic in their publicly-stated attempt to block all oil and gas exploration on the Alaska OCS.

7.     Defendants' consistent practice of bringing judicial challenges to Shell's regulatory authorizations has required Shell to expend considerable time and resources defending its authorizations in various judicial and administrative forums.

8.     More importantly, forcing SGOMI to wait until the last-minute challenge these Defendants are sure to make, creates tremendous uncertainty regarding SGOMI's ability to proceed with its approved exploration activities in the Chukchi Sea in 2012.  As a result, SGOMI is placed in the untenable position where it must expend considerable resources in order to be prepared in the event that it is allowed to proceed with exploratory drilling in the 2012 open-water season, while at the same time remaining uncertain about the status of its approved OSRP.

9.     Rather than await the inevitable last-minute challenge, SGOMI affirmatively brings this declaratory judgment action so that it may expeditiously receive judicial review of BSEE's action.

## II.     THE PARTIES

10.     Plaintiff Shell Gulf of Mexico Inc. is a Delaware corporation with its principal place of business in Houston, Texas.

11.     Defendant Center for Biological Diversity, Inc. ("CBD") is an Arizona charitable corporation with its principal place of business in Tucson, Arizona.

12.     Defendant REDOIL, Inc. ("REDOIL") is an Alaska nonprofit corporation with its principal place of business in Fairbanks, Alaska.

13.     Defendant Alaska Wilderness League ("AWL") is a District of Columbia nonprofit corporation with its principal place of business in Washington, D.C.

14.     Defendant Natural Resources Defense Council, Inc. ("NRDC") is a New York not-for-profit corporation with its principal place of business in New York, New York.

15.     Defendant Northern Alaska Environmental Center ("NAEC") is an Alaska nonprofit corporation with its principal place of business in Fairbanks, Alaska.

16.     Defendant Pacific Environment and Resources Center ("PERC") is a California corporation with its principal place of business in San Francisco, California.

17.     Defendant Sierra Club is a California corporation with its principal place of business in San Francisco, California.

18.     Defendant Wilderness Society is a District of Columbia nonprofit corporation with its principal place of business in Washington, D.C.

19.     Defendant Ocean Conservancy Inc. ("OCI") is a District of Columbia nonprofit corporation with its principal place of business in Washington, D.C.

20.     Defendant Oceana Inc. ("Oceana") is a District of Columbia nonprofit corporation with its principal place of business in Washington, D.C.

21.     Defendant Defenders of Wildlife ("DoW") is a District of Columbia nonprofit corporation with its principal place of business in Washington, D.C.

22.     Defendant Greenpeace, Inc. ("Greenpeace") is a California nonprofit corporation with its principal place of business in Washington, D.C.

23.     Defendant National Audubon Society, Inc. ("Audubon") is a New York nonprofit corporation with its principal place of business in New York, New York.

### III.     JURISDICTION AND VENUE

24.     This action seeks a declaration regarding BSEE's compliance with OCSLA and OPA.  This Court has subject matter jurisdiction to determine these federal questions pursuant to 28 U.S.C. § 1331, and jurisdiction to issue a declaration pursuant to 28 U.S.C. §§ 2201-02.

25.     This action seeks a declaration regarding the legality of an agency action.  This Court has subject matter jurisdiction to review agency action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702-06.

26.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the Plaintiff SGOMI, a citizen of Delaware and Texas, is completely diverse from the Defendants, citizens of Alaska, Washington, D.C., New York, California, and Arizona, and the value of the object of the litigation exceeds $75,000.

27.     This action seeks a declaration regarding agency approval of an OSRP governing exploration activities in the Chukchi Sea of the Alaskan OCS.  Venue is therefore appropriate under 28 U.S.C. § 1391(b)(2).

28.     This action presents an actual controversy amenable to resolution by declaratory judgment.

## IV.     FEDERAL STATUTORY AND REGULATORY BACKGROUND

29.     This action involves review of BSEE's approval of SGOMI's OSRP under two federal statutes: OCSLA and OPA.

30.     In enacting OCSLA, Congress decreed that "the outer Continental Shelf is a vital national resource reserve held by the Federal Government for the public, which should be made available for expeditious and orderly development, subject to environmental safeguards, in a manner which is consistent with the maintenance of competition and other national needs."  43 U.S.C. § 1332(2).

31.     OCSLA sets forth a four-stage process for the leasing, exploration, and development of the OCS for oil and gas development.  During the third stage, a successful lessee must submit an exploration plan ("EP") for approval prior to commencing exploratory drilling. Among the information that must accompany an EP is "[a]n Oil Spill Response Plan (OSRP) for the facilities [the leaseholder] will use to conduct [its] exploration activities" or "[r]eference to [the leaseholder's] approved regional OSRP."  30 C.F.R. § 550.219(a).

32.     OCSLA's requirement of an OSRP overlaps with the obligations imposed on operators of offshore facilities by the OPA, which governs the removal of spilled oil and requires operators to plan for and respond to oil spills.  Like OCSLA, the OPA requires that owners and operators of offshore facilities prepare "a plan for responding, to the maximum extent

practicable, to a worst case discharge, and to a substantial threat of such a discharge, of oil." 33 U.S.C. § 1321(j)(5)(A)(ii). The specific requirements for a plan satisfying the OPA requirements are found at 30 C.F.R. Part 254.

33. An operator's OSRP is subject to review and approval by BSEE. Reorganization of Title 30: Bureaus of Safety and Environmental Enforcement and Ocean Energy Management, 76 Fed. Reg. 64,432, 64448-49, Table F (October 18, 2011). An OSRP must comply with the requirements of 30 C.F.R. Part 254. Specifically, in addition to an emergency response action plan, an OSRP must contain information regarding equipment inventory, contractual agreements, and training and drills, as well as a scenario for the estimated worst-case discharge from an oil spill at the subject facility and plans for the use of chemical dispersants and *in situ* burning of spilled oil.

34. OCSLA further requires that new drilling operations make "use of the best available and safest technologies which the Secretary determines to be economically feasible, wherever failure of equipment would have a significant effect on safety, health, or the environment, except where the Secretary determines that the incremental benefits are clearly insufficient to justify the incremental costs of utilizing such technologies." 43 U.S.C. § 1347(b).

35. OCSLA's Best Available and Safest Technology ("BAST") requirement is incorporated into BSEE's regulations at 30 C.F.R. § 250.107(c), which requires the use of BAST on all exploration, development, and production operations and states that "[i]n general, we consider your compliance with BSEE regulations to be the use of BAST." *Id.* The regulations explain that BSEE may require "additional measures" to ensure the use of BAST. *Id.* at § 250.107(d).

36.     On June 18, 2010, following the *Deepwater Horizon* incident in the Gulf of Mexico, the Department of the Interior issued Notice to Lessees ("NTL") 2010-N06, entitled "Information Requirements for Exploration Plans, Development and Production Plans, and Development Operations Coordination Documents on the OCS," effective as of June 18, 2010. NTL 2010-N06 revised the assumptions in the blowout calculation scenarios that must be included in these plans.

37.     On November 8, 2010, the Department of the Interior issued NTL 2010-N10, entitled "Statement of Compliance with Applicable Regulations and Evaluation of Information Demonstrating Adequate Spill Response and Well Containment Resources."  NTL 2010-N10 "clarifie[d], supplement[ed], and provide[d] more detail about existing regulations" governing the content of an OSRP.  Specifically, the NTL clarified the type of information required to be submitted in connection with an OSRP, but did not require operators to submit revised OSRPs immediately.

38.     Unlike the deadline under OCSLA for challenging an EP, the general six-year statute of limitations applies to any challenge that BSEE's approval of the OSRP does not comply with OCSLA or OPA.  Accordingly, Defendants could wait until immediately prior to SGOMI's planned exploration activities in July 2012 to file a challenge to BSEE's approval of SGOMI's OSRP and to seek an injunction to prevent SGOMI from proceeding with its planned (and approved) exploration activities.

## V.     FACTS

### A.     SGOMI's OSRP

39.     BSEE's predecessor, the Minerals Management Service, unconditionally approved SGOMI's 2010 Chukchi OSRP on April 6, 2010.[1]

40.     The approval letter required SGOMI to submit the results of the biennial review of the Chukchi OSRP mandated by 30 C.F.R. § 254.30(a) no later than December 17, 2011.

41.     The regulatory changes following the *Deepwater Horizon* incident and the change in methodology by which the worst case discharge ("WCD") should be calculated prompted SGOMI voluntarily to update its Chukchi OSRP ahead of the regulatory two-year schedule.

42.     SGOMI submitted the ORSP subject to the current action to BSEE for approval on May 22, 2011, and thereafter engaged in the normal iterative process with BSEE that is reflected in the administrative record.

43.     That OSRP revised the existing Chukchi OSRP by (i) updating the agency name to reflect organizational changes in the Department of the Interior; (ii) supplementing SGOMI's response capability by adding the voluntary additional mitigation measure of a subsea well capping and containment system, additional vessel storage capacity, and additional vessel skimming systems, all of which result in a significant increase in SGOMI's potential recovery capacity; and (iii) recalculating the WCD scenario pursuant to NTL No. 2010-06.

---

[1] Prior to the sunset of Alaska's Coastal Management Program in July 2011, the Alaska Department of Natural Resources ("ADNR") conducted a thorough review of spill plans against the state standards.  AS 46.39.040.  Authority to review and approve such plans now rests only with BSEE.  76 Fed. Reg. at 64448-49, Table F; AS 44.66.030.

44.     SGOMI participated in meetings for the Inter Agency Working Group review of the OSRP on November 1, 7, 8, and 9, 2011.  The Inter Agency Working Group includes BSEE, the U.S. Coast Guard, the Environmental Protection Agency, the National Oceanic and Atmospheric Administration, the Council for Environmental Quality, and the White House Inter Agency Arctic Group.

45.     On November 16, 2011, SGOMI received a Request for Additional Information from BSEE based on comments from the Inter Agency Working Group comments.

46.     SGOMI provided the requested information on December 8, 2011.

47.     BSEE made the OSRP available for public comment on November 16, 2011, with the comment period closing on December 7, 2011.

48.     On December 7, 2011, environmental organizations including Defendants Alaska Wilderness League, Audubon, Center for Biological Diversity, Defenders of Wildlife, Greenpeace, Natural Resources Defense Council, Northern Alaska Environmental Center, Ocean Conservancy, Oceana, Pacific Environment, Resisting Environmental Destruction on Indigenous Lands (REDOIL), Sierra Club, and The Wilderness Society submitted comments on SGOMI's OSRP.

49.     On December 19, 2011, BSEE requested that SGOMI reformat and reorganize the OSRP to track BSEE regulatory provisions.  As originally submitted, the OSRP had tracked Alaska regulatory provisions.

50.     SGOMI submitted final amendments including a reformatting of the OSRP and an additional explanation of certain issues on February 3, 2012.

**B.      BSEE's Approval of the OSRP**

51.      BSEE approved the OSRP on February 17, 2012, stating that it was found to be "in compliance with 30 CFR 254."[2]    The Approval Letter did not state that any "additional measures" were necessary to ensure the use of BAST.  According to a statement issued by the Department of the Interior in conjunction with the approval, BSEE "ha[s] confidence that [SGOMI's] plan includes the necessary equipment and personnel pre-staging, training, logistics, and communications to act quickly and mount an effective response should a spill occur."[3]

52. The OSRP includes all information required by the OPA as implemented in 30 C.F.R. Part 254.  In addition to all elements required by regulation, the OSRP also includes the OSRP "Quick Guide" (for use in immediate response); a description of the capping stack; a plan for response in adverse discharge scenario; information on logistical support services and supplies; a discussion of response operating conditions and limitations; a wildlife response plan; forms for use in implementing the OSRP; oil debris and disposal procedures; and supplements regarding compliance with requirements from the U.S. Coast Guard Supplement and the Alaska Department of Environmental Conservation.

53.      This approval of SGOMI's OSRP is valid under, and complies with, OCSLA and OPA.

---

[2] Letter from David M. Moore, Chief, Oil Spill Response Division, BSEE, to Susan Childs ("Approval Letter") (Exhibit B).

[3] Press Release, Department of the interior, Obama Administration Announces Major Steps Toward Science-Based Energy Exploration in the Arctic (Feb. 17, 2012), available at http://www.doi.gov/news/pressreleases/Obama Administration Announces -Major-Steps-toward-Science-Based-Energy- Exploration-in-the-Arctic.cfm

54.     BSEE's approval of SGOMI's OSRP constitutes a final administrative action. *First*, BSEE's approval constitutes the culmination of the agency's decision-making process.  No further action by BSEE is necessary to give effect to its determination that SGOMI's OSRP satisfies statutory and regulatory requirements.  *Second*, BSEE's approval has concrete legal consequences: it permits SGOMI to proceed with its exploration activities pursuant to an approved exploration plan.

55.     In the absence of swift judicial review, SGOMI will suffer undue hardship.  There is no reason to delay such review given the immediate and substantial controversy between SGOMI and Defendants concerning the appropriateness of BSEE's approval.

### C.     The Existence of an Immediate and Substantial Controversy is Not Reasonably Disputable Given Defendants' Longstanding Pattern and Practice of Filing Challenges to Shell's Regulatory Authorizations

56.     Given their public statements and actions and their longstanding pattern and practice of filing challenges to Shell's regulatory authorizations, Defendants cannot reasonably contend that they will not challenge BSEE's approval of the OSRP.

57.     Indeed, it is a virtual certainty that Defendants will file a legal challenge to the OSRP approval, and in fact some Defendants have expressed a specific intent to file such a challenge.  In various combinations, Defendants have brought challenges to Shell's planned exploration activities at every available opportunity.  Indeed, Defendants' pending Ninth Circuit challenge to BOEM's approval of SOI's Revised 2012 Camden Bay EP focused almost exclusively on SOI's oil spill response capability.  Additionally, Defendants have, jointly and separately, made public statements attacking the propriety of Shell's OCS activities generally and the OSRP specifically.  (*See* ¶¶ 62-78.)  And Defendants have, jointly and separately, brought countless other challenges to federal regulatory decisions pertaining to oil and gas activities in

the Arctic.  Defendants' practice of challenging prior agency approvals together with their public statements regarding the OSRP make it overwhelmingly clear that they will likely bring such a challenge to the BSEE's approval of the OSRP.

58.   Defendants have challenged virtually every agency approval associated with SGOM and its affiliates' exploration activities in the Arctic, including:

a.   Seismic Activity Authorizations

    i.   Authorized Seismic Activity in the Chukchi and Beaufort Seas (*Native Vill. of Point Hope v. Minerals Mgmt. Serv.*, 564 F. Supp. 2d 1077 (D. Alaska 2008))

b.   Five-Year Plan & Lease Sales

    i.   2007-2012 Alaska OCS Five-Year Plan (*Ctr. for Biological Diversity v. U.S. Dept. of Interior*, 563 F.3d 466 (D.C. Cir. 2009))

    ii.   Lease Sale 193 (*Native Village of Point Hope v. Salazar*, No. 1:08-cv-00004-RRB (D. Alaska dismissed Feb. 15, 2012))

c.   Exploration Plans

    i.   SOI's 2007-2009 Camden Bay exploration plan (*Alaska Wilderness League v. Kempthorne*, 548 F.3d 815 (9th Cir. 2008), *vacated and withdrawn*, 559 F.3d 916 (9th Cir. 2009), *appeal dismissed as moot*, *Alaska Wilderness League v. Salazar*, 571 F.3d 859 (9th Cir. 2009))

    ii.   Shell's 2010 Chukchi Sea and Camden Bay exploration plans (*Native Village of Point Hope v. Salazar*, 378 Fed. App'x 747 (9th Cir. 2010)).

    iii.   SOI's 2012 Camden Bay exploration plan (*Native Village of Point Hope v. Salazar*, No. 11-72891 (9th Cir. filed Sept. 29, 2011))

    iv.   SGOMI's 2012 Chukchi Sea exploration plan (*Native Village of Point Hope v. Salazar*, No. 12-70459 (9th Cir. filed Feb. 13, 2012))

d.   Air Permits

    i.       *Discoverer* drillship (*In re Shell Gulf of Mexico, Inc. & Shell Offshore, Inc.*, 15 E.A.D. __ (EAB Dec. 30, 2010) (administrative appeal remanding permit to Region 10 for additional review))

    ii.      *Discover* drillship (*Shell Gulf of Mexico, Inc.*, 15 E.A.D. __ (EAB Jan. 12, 2012) (dismissal of administrative appeal of permit issued following remand proceedings), petition for review filed Feb. 17, 2012 (9th Cir. No. 12-70518))

    iii.     *Kulluk* drilling unit (In re *Shell Offshore Inc.*, OCS Appeal Nos. 08-01 through 08-03) (administrative appeal of permit issued following remand proceedings ordered by earlier 2007 challenge to original *Kulluk* permit; appeal dismissed prior to decision upon withdrawal of permit application)

    iv.     *Kulluk* drilling unit (*Shell Offshore Inc.*, OCS Appeal Nos. 11-05 through 11-07 (EAB) (administrative appeal of resubmitted permit))

59.    A chart detailing each Defendant's participation in the above challenges is attached hereto as Exhibit C.

60.    Defendants have likewise attempted to stop oil & gas exploration activities through challenges to agency actions affecting wildlife, including:

    a.     Endangered Species Act challenges

        i.     No designation of Pacific walrus (*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Service*, No. 3:08-cv-00265 (D. Alaska))

        ii.    No designation of ribbon seal (*Ctr. for Biological Diversity v. Lubchenco*, No. C-09-04087 (N.D. Cal. Dec. 21, 2010))

        iii.   Polar bear's designation as threatened, rather than endangered (*In re Polar Bear Endangered Species Act Listing & § 4(d) Rule Litig.*, Misc. No. 08-764 (EGS), MDL Docket No. 1993, 794 F. Supp. 2d 65, (D.D.C. 2011))

    b.     Incidental Take Regulations

        i.     Polar bear and Pacific walrus incidental take regulations for Beaufort Sea oil and gas activities (*Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701 (9th Cir. 2009))

ii.    Polar bear and Pacific walrus incidental take regulations for Chukchi Sea oil and gas activities ((*Ctr. for Biological Diversity v. Salazar*, No. 3:08-cv-00159 RRB (D. Alaska Jan. 2010), *appeal pending*, No. 10-35123 (9th Cir.)).

61.    While Shell is not the only oil and gas company pursuing exploratory drilling on the Alaska OCS, it is the furthest along with its exploration plans.  Defendants thus have focused on pursuing legal challenges to Shell-related exploration activities, although not to the exclusion of challenging agency approvals related to other companies activities in the Arctic, including a recent challenge to general wastewater discharge permit notices by Lease Sale 193 lessees ConocoPhillips and Statoil (*Inupiat Community of the Arctic Slope v. Jackson*, No. 11-73182 (9th Cir. filed Oct. 21, 2011).

62.    Consistent with this pattern of judicial challenges, Defendants and their counsel have made numerous and repeated public statements indicating their intent to stop drilling in the Arctic altogether—*e.g.*, "[o]ne [drilling] ship is one ship too many"[4]—and, specifically, to challenge BSEE's approval of SGOMI's OSRP.

63.    In fact, Defendants were threatening litigation within hours of BSEE's approval of SGOMI's OSRP.  For example, in a story about the approval dated February 17, 2012, the *Alaska Dispatch* reported: "An official with Oceana, an environmental group that has fought [SGOMI's] plans, warned that … [agency] approvals can still be taken to court."  The same article quoted Susan Murray, senior director for the Pacific at Oceana, saying: "One of the outcomes of this headlong rush is that the conversation could shift from policy makers to courtrooms."  According

---

[4]  Dan Joling, *Shell Oil Withdraws Beaufort Drilling Plan*, ANCHORAGE DAILY NEWS, May 6, 2009, *available at* http://www.adn.com/2009/05/06/v-printer/785631/shell-oil-withdraws-beaufort-drilling.html (statement of Brendan Cummings, an attorney for Defendant Center for Biological Diversity).

to the article, "[a]lso heading to court might be this latest approval for the company's oil-spill response plan in the Chukchi, Murray said."[5]  Oceana also issued a press release that same day stating that it was "appalled" by BSEE's approval of the OSRP.[6]

64.     These threats of litigation are just the latest in a long string of comments by Defendants condemning the agency action and identifying purported errors that, if accurate, would constitute a basis for reversal on appeal.  These statements can only be interpreted as tacit threats of litigation to attempt to overturn agency approval of Shell's exploration activities.

65.     For example, on August 5, 2011, following agency approval of SOI's 2012 Camden Bay Exploration Plan, Earthjustice—a public interest law firm that has represented most of the Defendants in many of the above-noted challenges—issued a statement condemning the agency's "rubber stamp" approval and highlighting a perceived inadequacy in oil spill response planning.  The statement also collected and reproduced statements by many of the Defendants that likewise criticized agency approval of the EP and particularly the alleged inadequacy of Shell's spill response planning.[7]

---

[5]   Alex DeMarban, *Lawsuit Threats Loom Over Latest Approval for Shell's Alaska Drilling*, ALASKA DISPATCH, February 17, 2012, *available at* http://www.alaskadispatch.com/article/lawsuit-threats-loom-over-latest-approval-shells-alaska-drilling.

[6]   Press Release, Oceana, Oceana Appalled that Obama Administration Puts Offshore Arctic at Risk (February 17, 2012), *available at* http://oceana.org/en/news-media/press-center/press-releases/oceana-appalled-that-obama-administration-puts-offshore-arctic-at-risk.

[7]   Press Release, Earthjustice, Feds Ignore Risks and Green Light Shell Drilling in Arctic Ocean (August 5, 2011), *available at* http://earthjustice.org/news/press/2011/feds-ignore-risks-and-green-light-shell-drilling-in-arctic-ocean.

66.    For instance, the statement quoted Carole Holley, Alaska program co-director at PERC, asserting that "there's no way to clean up an oil spill in the arctic" and calling agency approval of the EP "a completely irrational decision" on that ground.  The statement also quoted Chuck Clusen, director of Alaska projects for NRDC, calling Shell's spill response plans "the height of irresponsibility or ignorance" that "should be stopped."  The statement also quoted Robert Thompson, Chairman of REDOIL, as stating that Shell's proposed exploration activities "lack a credible plan to deal with oil spills."  And the statement quoted Leah Donahey, Western Arctic and Oceans Program Director at Alaska Wilderness League, asserting that Shell's "oil spill plans are full of inadequacies and falsehoods" and that approval of Shell's exploration activities was therefore "unconscionable."

67.    Taken at face value, these assertions of irrationality, lack of credibility, inadequacy, and falsehood, together with the exhortation that Shell's plans "should be stopped," in a statement issued by a law firm, strongly suggest that the Defendants intend to "stop" Shell's exploration activity through litigation.

68.    Defendants have made similar statements specifically relating to SGOMI's OSRP. On October 3, 2011, for example, Defendants CBD, REDOIL, Defenders of Wildlife, Audubon, Alaska Wilderness League, NRDC, NAEC, PERC, Wilderness Society, and Oceana joined in a statement calling SGOMI's OSRP "woefully inadequate," criticizing BSEE's predecessor agency for failing to "require[e] that … proven methods for cleaning up an Arctic oil spill be developed before opening the Chukchi Sea to oil and gas companies," and asserting that "if an oil spill were

to happen in the Arctic's extreme, remote conditions, there is no proven method and almost no resources available to clean it up."[8]

69.     Defendants' assertion that the agency approved the OSRP without requiring necessary information bespeaks not only a general environmental concern but a specific statutory and regulatory objection that can be vindicated only through litigation.

70.     In fact, Defendant CBD has publically boasted about its history of litigation in opposition to Shell's exploration activities.  On its website, CBD emphasizes that "the Center and our Alaskan allies have successfully blocked offshore oil development in the Beaufort and Chukchi seas through as series of lawsuits.  …  As a result [of these lawsuits], Shell Oil—slated to drill in the Arctic every year since 2007—has not yet stuck its drills in the water."  CBD, moreover, has made its future intentions clear, stating that "Shell Oil has put forth even more extreme drilling plans for 2012" and promising that "the Center and our allies continue to battle it out in court, while at the same time pressing for a permanent halt on offshore drilling in all U.S. waters, starting in Alaska."  CBS also states on its website that, "There is a short window to stop risky drilling with two steps: (1) halt drilling, because there's no adequate oil-spill response and (2) defer new lease sales proposed for the Beaufort and Chukchi seas.  This provides a powerful opportunity for a victory that will protect the Arctic Ocean. … We have an important opportunity right now to protect the Arctic environment.  There is a broad coalition of

---

[8]  Press Release, Earthjustice, Politics Trump Science in Latest Obama Decision on Arctic Ocean Drilling (October 3, 2011), *available at* http://earthjustice.org/news/press/2011/politics-trump-science-in-latest-obama-decision-on-arctic-ocean-drilling.

environmental organizations and indigenous leaders who are opposed to Arctic Ocean drilling. The federal government must not allow drilling to proceed in the Beaufort and Chukchi seas."[9]

71.     The Defendants' intent to litigate is further corroborated by statements from Earthjustice itself.  Earthjustice has long taken the position, as reflected in a February 3, 2011 statement on the organization's website, that "there is no way to clean up an offshore oil spill in the arctic."[10]  Pursuant to this absolute position, Earthjustice has consistently threatened to litigate the agency approvals necessary for Shell to proceed with its exploration activities.

72.     For instance, a posting on Earthjustice's website on August 19, 2011 noted that "Earthjustice attorneys [had] been analyzing the agency's decision" to approve SOI's 2012 Camden Bay Exploration Plan and had decided that "[t]he spill response plan Shell has submitted is totally inadequate."  Accordingly, Earthjustice promised to "be very vigilant" in "making sure Shell does not start drilling without the necessary environmental protections in place."[11]  And a later posting on the organization's website condemned Shell's planned 2012 exploration activities, called on the President to "delay Arctic Ocean drilling," and threatened to "get [the President's] attention in any way we can."[12]

---

[9]     Center for Biological Diversity, *Arctic Oil Development—Our Campaign*, http://www.biologicaldiversity.org/programs/public_lands/energy/dirty_energy_development/oil _and_gas/arctic/index.html.

[10]    Press Release, Earthjustice, Shell to Forego 2011 Arctic Ocean Drilling (February 3, 2011), *available at http://earthjustice.org/news/press/2011/shell-oil-to-forego-2011-arctic-ocean-drilling.*

[11]    David Lawlor, *Shell Oil Living in a Land of Make Believe*, Earthjustice (Aug. 19, 2011), *available at* http://earthjustice.org/blog/2011-august/shell-oil-living-in-a-land-of-make-believe.

[12]    Jared Saylor, *Dear Obama: How Could You Approve Drilling in Arctic Ocean?*, Earthjustice (Dec. 12, 2011), *available at* http://earthjustice.org/blog/2011-december/dear-obama-how-could-you-approve-drilling-in-arctic-ocean.

73.     Similarly, on September 29, 2011, Earthjustice issued a statement in connection with the challenge to SOI's 2012 Camden Bay Exploration Plan by Defendants CBD, REDOIL, Defenders of Wildlife, Greenpeace, Audubon, Alaska Wilderness League, NRDC, NAEC, PERC, Wilderness Society, and Oceana.  The statement asserted that Shell's "current oil spill plan is full of inadequacies and falsehoods" and that approval of Shell's planned exploration activities was therefore "irresponsible and risks disaster."[13]

74.     And on October 24, 2011, Earthjustice issued a statement in connection with an administrative challenge by Defendants CBD, REDOIL, Alaska Wilderness League, NRDC, NAEC, PERC, Wilderness Society, Oceana, Ocean Conservancy, and Sierra Club to SOI's 2011 air permit for the *Kulluk*.  The statement asserted that "Arctic Ocean oil drilling is simply a bad idea" and that "the thought of cleaning up an oil spill" in the Chukchi Sea "is ludicrous."[14]

75.     Defendants' campaign to stop SGOMI's exploration activities is not limited to making public statements and filing litigation.   On February 23, 2012, six self-identified Greenpeace activists unlawfully boarded the exploration drilling vessel *Noble Discoverer*, which Shell has contracted to perform some of the very Chukchi Sea exploration drilling at issue in this litigation.   The Greenpeace activists successfully prevented the *Noble Discoverer* from leaving the Port of Taranaki, New Zealand, for several days before being arrested by local police.   On its website, Greenpeace called this illegal conduct "a fitting first chapter for what will undoubtedly

---

[13]   Press Release, Earthjustice, Arctic Shell Game: No Spill Plan, No Problem—Feds Say Just Drill (Sept. 29, 2011), *available at* http://earthjustice.org/news/press/2011/arctic-shell-game-no-spill-plan-no-problem-feds-say-just-drill.

[14]   Press Release, Earthjustice, Groups Challenge EPA Approval of Shell Oil Pollution in the Arctic Ocean (Oct. 24, 2011), *available at* http://earthjustice.org/news/press/2011/groups-challenge-epa-approval-of-shell-oil-pollution-in-the-arctic-ocean.

be an epic battle" to stop Shell's planned exploration activities, and asserted that "both common sense and scientific consensus tells us there is no way to safely drill" in the Arctic.[15]

76.     Such statements challenging the core determination underlying BSEE's approval of SGOMI's OSRP, together with Defendants' years-long pattern of challenging virtually every approval of the various aspects of Shell's exploration activities, as well as Defendants' demonstrated willingness to stop SGOMI's exploration activities "any way we can," establishes that Defendants will undoubtedly challenge BSEE's approval of SGOMI's OSRP.

77.     Despite the overwhelming likelihood of such a challenge, SGOMI is subject to significant uncertainty in light of Defendants' consistent practice of waiting until the latest possible date before filing their judicial challenges.   For example, varying combinations of Defendants waited nearly all, if not entirely all, of the sixty-day period permitted under OCSLA before filing their challenges to SGOMI's 2012 Chukchi Sea exploration plan, SOI's 2012 Camden Bay exploration plan, SGOMI's 2010 Chukchi Sea exploration plan, and SOI's 2010 Camden Bay exploration plan.

---

[15]   Bunny McDiarmid, *Seven of Us Climbed Up That Drillship to Stop Arctic Drilling, but 133,000 of Us Came Down*, Greenpeace (Feb. 27, 2012), *available at* http://greenpeaceblogs.com/2012/02/27/seven-of-us-climbed-up-that-drillship-to-stop-arctic-drilling-but-133000-of-us-came-down/.

78.     Given the finality of BSEE's approval, the purely legal nature of the declaration sought, the immediate and substantial conflict between SGOMI and Defendants, and the harm that SGOMI would suffer in the absence of a prompt review of BSEE's action, declaratory judgment is appropriate here to settle all aspects of the controversy at issue and clarify SGOMI's rights to proceed with its planned exploration activities, without causing any inconvenience to the parties.

### CLAIM FOR RELIEF

*Declaratory Judgment*

79.     Plaintiff SGOMI incorporates the allegations of paragraphs 1 through 78 by reference.

80.     The OSRP satisfies applicable OPA requirements by providing all information required by the OPA in 30 C.F.R. Part 254.  The OSRP complies with OCSLA by meeting the BAST requirement at 30 C.F.R. 250.107(c).

81.     Based on Defendants' substantial threat of litigation and Defendants' pattern and practice of filing last-minute challenges to Shell's regulatory authorizations, SGOMI requests a declaration from the Court that:

a.     The procedures BSEE employed in approving SGOMI's OSRP comply with the APA;

b.     BSEE's conclusion that SGOMI's OSRP complies with OPA and OCSLA and their implementing regulations at 30 C.F.R. Parts 250 and 254 is not arbitrary, capricious, an abuse of discretion, or otherwise in violation of law.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays that the Court:

1.      Issue a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that BSEE complied with the APA in approving SGOMI's OSRP; and BSEE's conclusion that SGOMI's OSRP complies with OPA and OSCLA and their implementing regulations at 30 C.F.R. Parts 250 and 254 is not arbitrary, capricious, an abuse of discretion, or otherwise in violation of law.

2.      Award it reasonable attorneys' fees and costs; and

3.      Award it such other and further relief as is just and equitable.

DATED at Anchorage, Alaska this 29th day of February, 2012.

CROWELL & MORING LLP
Attorneys for Shell Gulf of Mexico, Inc.

 /s/ Kyle W. Parker
Kyle W. Parker, ABA No. 9212124
David J. Mayberry, ABA No. 9611062
CROWELL & MORING LLP
1029 W. 3rd Avenue, Suite 402
Anchorage, Alaska 99501
Telephone:     (907) 865-2600
Facsimile:     (907) 865-2680
kparker@crowell.com
dmayberry@crowell.com

Of Counsel:

Kathleen M. Sullivan
William B. Adams
David S. Mader
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Flr.
New York, New York 10010
Telephone:     (212) 849-7000